No. 40.—ALEXANDER J. ROBISON, plaintiff in error, *vs.* JOHN BANKS, defendant in error.

[1.] Whenever an execution may be *proceeding* illegally, though it issued legally, the affidavit of illegality is a remedy.

[2.] Issue on an affidavit of illegality, to a certified subpœna-account, that the number of days of attendance charged for by the witness, was too great, and charge of the Court to the effect, that the subpœna-accounts were *prima facie* evidence for the witness: *Held*, that the charge of the Court was right.

[3.] A witness cannot charge for attendance rendered after the case has been postponed or continued, whether he happens to hear the announcement of the postponement or continuance or not.

[4.] The same party summons a person as a witness in more cases than one: *Held*, that the witness may charge full fees in each case.

Illegality, in Muscogee Superior Court.   Tried before Judge WORRILL, June Adjourned Term, 1854.

Alexander J. Robison summoned John Banks as a witness for him, in nine several cases, serving a *subpœna* in each case. Banks swore that he attended eight days at one term and thirty-eight days at another term, and caused the subpœnas thus proven to be levied on a city lot.   Robison made "an affidavit of illegality," alleging—1st. That Banks did not attend as alleged.  2nd. That the presiding Judge announced, early in each Court, that the cases would not be tried, unless he could get another Judge.   3d. That Banks was entitled to

claim only on one subpœna for each day's attendance.    4th. That subpœnas could be levied only on personalty.

At the trial, Counsel for Banks moved to strike out the last ground, as insufficient.    The Court granted the motion, and Robison excepted.

Judge IVERSON, as a witness, stated that as presiding Judge, he did make the announcement as to the trial of the cases, early in the term.    The Court charged the Jury, that Banks having proven his attendance by his affidavit, the same was evidence for him of such attendance, and would entitle him to recover, until the same was disproven, or in some other way avoided by Robison.    To this charge Robison excepted.

The Court farther charged, that if the Jury believed the presiding Judge made the announcement from the Bench, in open Court, that the cases would not be tried, and that Banks was present and heard it, then he would not be entitled to payment after that time.    But if Banks was not present, or was not notified of it by the party subpœnaing him, then he was entitled to payment.

To this charge Robison excepted.    The Court farther charged, that if Banks was entitled to any thing as a witness, he was entitled to his *per diem* pay on each subpœna.    To this charge Robison excepted.    On these several exceptions error is assigned.

INGRAM & CRAWFORD, for plaintiff in error.

DOUGHERTY, for defendant in error.

*By the Court.*—BENNING, J. delivering the opinion.

The Court below decided, that the levy of a certified subpœna-account on *land*, is a matter which cannot be reached by affidavit of illegality.    This decision is the first assigned as erroneous.

A part of the thirty-second section of the Judiciary Act of 1799, is as follows: "In all cases where execution shall issue

'illegally, and the person against whom such execution may be, shall make oath thereof, and shall state the causes of such illegality, such Sheriff shall return the same to the next term of the Court out of which the same issued, which Court shall determine thereon, at such term." (*Cobb's Dig.* 509.)

The word "issue," in this section, has always, to the best of the knowledge and information of this Court, been considered and treated as having the sense of the word proceed. That is the sense which the word is assumed to have by the rule of Court which has reference to the affidavit of illegality, for the only case which that rule provides for, is a case in which the illegality consists, not in the execution's having *issued* illegally, but in its *proceeding* illegally, though it was issued legally. It is the case in which, notwithstanding that a payment has been made *on the execution*, the execution is proceeding, as if no payment had been made on it. The rule is in these words: "When an affidavit of illegality is made, on account of partial payment made on the execution, the defendant, at the time of making such affidavit, must pay up the amount he admits to be due, or the Sheriff shall proceed to raise the amount, and accept the affidavit for the balance."

The reason why the word, to "issue" has been thus treated as having the sense of the word to proceed, is, perhaps, twofold—first, the word was probably used in that sense in the Acts from which it was, by the Judiciary Act of 1799, adopted, viz: the Judiciary Acts of 1792, 1796? 1797. Secondly, the Statute using the word is a remedial one, and was intended, in all likelihood, to furnish a substitute for the remedy by *audita querala*—a remedy that lies for a man in execution, or in danger of it, when he has matter, in fact or in writing, to avoid such execution, and no other means to take advantage of it; that is, a remedy as much for matters arising after the issuing of the execution, as for matters arising after the judgment, but before the issuing of the execution. (*Wat. Dig.* 485, 616, 631.)

[1.] All this being so, it is too late, now, for Courts to inter-

pose and say that the word shall be no longer taken in the sense of the word proceed.

Taken, then, in the sense of that word, the decision of the Court below was wrong; for the Statute which turns a certified subpoena-account into an execution, the Judiciary Statute of 1799 authorizes such an execution to be levied of "goods and chattels" only, and the certified subpoena-account, in this case, was *proceeding* to be levied of *land.*

[2.] The charge of the Court below, that Banks, the witness, having proven his attendance by his affidavit, the same was evidence for him until disproven, we understand as amounting to no more than a statement to the Jury, that the subpoena-accounts, in their certified condition, were *prima facie* evidence of the correctness of the claim of Banks. And this they certainly were.

[3.] Section twenty-one of the Judiciary Act of 1799, is as follows: "When a subpoena shall be served on any witness, in conformity to this Act, it shall be the duty of such person so summoned, to attend, from time to time, until the cause in which such witness shall have been summoned, is tried or be otherwise discharged by the Court." Duty to attend from time to time until discharged, means duty to be *present,* in Court, from time time, until discharged. If, therefore, a witness is not present in Court when the case is postponed or continued, and so fails to hear the announcement of such postponement or continuance, it is his own fault; and he is not justified in attending afterwards and charging for his attendance.

The witness, therefore, in this case, was not justified in charging for attendance rendered after the announcement made by the Court, that the cases in which he was summoned would not be tried; and so we think the Court below should have told the Jury.

Is a witness, attending under subpoenas in different cases, at the instance of the same person, he a party in all of those cases, entitled to charge full fees in each case? The Court below told the Jury that a witness is. And we think, told them properly.

Robison vs. Banks.

The Fees Bill Act of 1792 says: "To each witness per day,. for his or her attendance, for coming and returning, allowing 30 miles for a day, not allowing for more than three witnesses. to be paid by the person summoning the same, and taxed in the bill of costs 75" (cents.)  By the Act of 1839 seventy-five cents a day is raised, for Muscogee County, to one dollar and fifty cents.  (*Cobb's Dig.* 353.  *Acts of* 1839, 141.)

" Taxed in the bill of costs," must mean taxed in the bill of costs *of the case* in which the witness may have been subpœned.  In every case there is a bill of costs.  If, therefore, there are more cases in which the witness has been subpœned than one, there will be more bills of costs in which his *per diem* is to be taxed than one.

The party, then, that summons a witness in more cases than one, has the right, if he gains the cases, to tax his adversary with full fees for the witness, in each case.  But if he has the right to tax his adversary with full fees in each case, it must be because he, himself, was under obligation, in the first instance, to pay the witness full fees in each case; that is to say, it must be because the witness, in such a state of things, is entitled to be paid full fees in each case.

And if in such a state of things the witness is entitled to be paid full fees in each case; that is to say, in a state of things in which the party calling him has the right to tax his adversary with the fees, then the witness is entitled to be paid them in each case in any and every state of things : for there is no law from which it can be presumed that the Legislature intended that the amount of compensation to a witness, was ever to be greater, if the party calling the witness should gain the case, and so acquire the right to tax his adversary with such compensation, than it was to be if that party should lose his case. On the contrary, there is law from which it is to be inferred, that the Legislature intended the fees of a witness to be the same, whether the party calling him should gain his case or should lose it.  The Act of 1792 gives the witness the right to make out his account for attendance, on the last day of his attendance in each term.  And it may, and frequently does hap-

pen, that such day comes before that of the termination of the suit, and so, before it can be known which party will succeed—which fail. (*Cobb's Dig.* 277.)

[4.] The result, then, seems to be, that a witness is entitled to charge the party which has summoned him, full fees for each case in which he may have been summoned.

The correctness of this conclusion, drawn from the words of Statutes, is confirmed by what has, as far as we know, been the uniform practice of all the Courts—a practice, perhaps as old as those Courts. Those Courts have always, we believe, allowed witnesses to charge full fees for each subpœna.

And yet, when the result to which the law, if this conclusion be correct, may, as exemplified in this case, lead, is considered, it is very difficult to think that the Legislature ever intended such to be the conclusion. In this case, the witness is summoned by the same party, in nine cases. He attends forty-six days, and for such attendance he charges, for each case, one dollar and a half a day—thirteen dollars and a half a day in all the cases. To allow such a charge, is to say that witnesses, in some cases—and those cases in which the witnesses are put to no unusual trouble or loss, shall be paid at a higher rate than the Governor of the State or members of Congress. Did the Legislature intend to say what would lead to this ? Hardly. Still, this results from what they have said and what they have left unsaid. They have said nothing to authorize any other rule than this.

If the Legislature had said, that in such case as this, or in cases in which the same person may be summoned by *different* parties, the witness should be entitled to have, for attendance in all the cases, no more than a named sum per day, to be collected at his option, out of any of the parties calling him, if called by more than one, provided the time for which he attended for that party, was as much as the whole time of his attendance ; and if not as much, then to be collected, in part, out of him, and as to the rest, out of another or others of those calling him—and had further said, that the party or parties out of whom he might so collect his pay, should have the right

to compel contribution to themselves from the other parties, so that the ultimate portion which each party would have to pay, would be in proportion to the service he had received from the witness; that is, in proportion to the length of time for which the witness had attended for him, then of course the conclusion to which we have come would have been different. But this the Legislature have not said.

On this point, therefore, we think the Court below was right.